UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

OTIS MICHAEL BRIDGEFORTH,

                         Plaintiff,

v.                                                        8:09-CV-0545
                                                          (GTS/RFT)
DR. POPOVICS; and SANDRA MCCARTHY,

                         Defendants.

─────────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

OTIS MICHAEL BRIDGEFORTH
   Plaintiff, *Pro Se*
Howard R. Young Correctional Institution
1301 E. 12th Street
Wilmington, DE 19809

FEATHERSTONHAUGH, WILEY & CLYNE, LLP        SCOTT J. ELY, ESQ.
   Counsel for Defendants
99 Pine Street
Albany, NY 12207

KRACKLER & MAGUIRE, P.C.                     RANDALL J. EZICK, ESQ.
   Co-Counsel for Defendants
16 Sage Estate
Sage Mansion
Menands, NY 12204

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        Currently before the Court in this *pro se* civil rights action, filed pursuant to 42 U.S.C. §

1983 by Otis Michael Bridgeforth ("Plaintiff") against Dr. Popovics and Sandra McCarthy

("Defendants"), are the following: (1) Defendants' motion to dismiss Plaintiff's Complaint for

failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or,

in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 7);[1] and (2)

Plaintiff's opposition to Defendants' motion to dismiss for failure to state a claim and his cross-

motion to "strike" record evidence submitted in support of Defendants' alternative motion (for

summary judgment), pursuant to Fed. R. Civ. P. 56(d), as "premature, inaccurate, and

incomplete" (Dkt. No. 9).[2]  For the reasons set forth below, Defendants' motion to dismiss for

failure to state a claim is granted in part and denied in part, such that Plaintiff's Complaint is

conditionally dismissed unless, within thirty days from the date of this Decision and Order, he

files an Amended Complaint that states a claim upon which relief can be granted.  In addition,

Defendants' alternative motion for summary judgment is denied without prejudice as

unsupported by a Local Rule 7.1 Statement and unaccompanied by a Local Rule 56.2 Notice.

---

[1]     Although Defendants premise their alternative motion (for summary judgment) on Fed. R. Civ. P. 12(d), that alternative motion is actually premised on Fed. R. Civ. P. 56: Fed. R. Civ. P. 12(d) is merely the rule that requires the court (after providing due notice to the parties) to treat a motion to dismiss for failure to state a claim as one for summary judgment under Fed. R. Civ. P. 56 when that motion to dismiss presents matters outside the pleadings, which are not excluded by the court.  Fed. R. Civ. P. 12(d).

[2]     Although Plaintiff premises his cross-motion (to strike) on Fed. R. Civ. P. 12(f), that cross-motion is actually premised on Fed. R. Civ. P. 56(d): Fed. R. Civ. P. 12(f) merely permits the court to strike certain matter from a "pleading," and Defendants' *motion* is not a "pleading."  Fed. R. Civ. P. 12(f); *see also Drew v. Chase Manhattan Bank, N.A.*, 95-CV-3133, at *4 (S.D.N.Y. July 30, 1998) (noting that the plain language of Fed. R. Civ. P. 12(f) relates to the striking of pleadings, not a motion to dismiss); *Rosen v. Raum*, 90-CV-7966, 1991 WL 79195, at *1 (S.D.N.Y. May 3, 1991) ("A motion to dismiss a complaint is not a pleading subject to motions to strike under Rule 12(f)."); *cf. George v. Letren*, 97-CV-5991, 1998 WL 684857, at *2 (S.D.N.Y. Sept. 30, 1998) (construing plaintiff's motion to "strike" defendant's motion to dismiss, based on an asserted "insufficien[cy]" in defendant's motion papers pursuant to Fed. R. Civ. P. 12(f), as an opposition to that motion to dismiss).

Finally, Plaintiff's cross-motion to strike is denied as moot and unsupported by a showing of cause.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's one-count Complaint claims that, in March 2007, while he was a student at Hudson Valley Community College ("HVCC"), Defendants violated the Fourteenth Amendment by denying him due process at a disciplinary hearing, thereby causing his indefinite dismissal from the college.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

In support of this due process claim, Plaintiff asserts the following factual allegations: (1) in March 2002, he was involved in an "on campus dispute" with a student, which resulted in a "[two] semester off campus suspen[s]ion [from HVCC] . . . without a board hearing"; (2) the suspension, which was "based on unlawfully placed photographs, and [an] established disciplinary record, never included a post probation term"; (3) "in 2005, . . . Plaintiff received his Associates Degree from [HVCC]"; (4) in 2007, Defendants "falsely alleged" that Plaintiff had violated "a non-existent probation order"; (5) based on Plaintiff's alleged violation of this "non-existent probation order," he was "dismissed indefinitely from the college campus, without making a threat, or threatening the security of staff or students, or teammates or coaches"; (6) in dismissing him from campus, Defendants relied on Plaintiff's "prior disciplinary record," which "did not include a probation order," and "fraudulent photographs" of the 2002 on-campus incident; (7) while he had been "previously warned for alleged established conduct, and suspended, [he] never had a probation order at [HVCC]"; (8) "Defendant McCarthy had

3

knowledge and possessed facts stating . . . Plaintiff was never on probation"; and (9) as a result

of Defendants' violation of Plaintiff's constitutional rights, Plaintiff has "suffer[ed] emotionally"

and his "student athlete career," as well as his "acceptability for enrollment" at colleges, has

been "jeopardized."  (*Id*.)

As relief for this alleged constitutional violation, Plaintiff seeks $2 million in damages

and the removal of the "disciplinary sanctions" from his "academic record."  (*Id.*)

### B.    Defendants' Motion and Plaintiff's Response

Generally, Defendants' motion argues as follows: (1) Plaintiff has failed to allege facts

plausibly suggesting that Defendants violated his right to due process under the Fourteenth

Amendment, because, based on his own factual allegations, he was actually afforded *more*

process than he was due under the Fourteenth Amendment prior to his dismissal from HVCC;

and (2) even if Plaintiff has alleged such facts, he has failed to adduce admissible record

evidence from which a rational fact-finder could conclude that Defendants violated his right to

due process under the Fourteenth Amendment, because, based on the undisputed facts, again, he

was actually afforded *more* process than he was due under the Fourteenth Amendment prior to

his dismissal from HVCC.  (*See generally* Dkt. No. 7, Attach. 8 [Defs.' Memo. of Law].)

Construed with the utmost of special liberality, Plaintiff's response to Defendants'

motion asserts an array of arguments, the strongest of which are as follows: (1) he has, in fact,

alleged facts plausibly suggesting that Defendants violated his right to due process under the

Fourteenth Amendment, by alleging, *inter alia*, that, in dismissing him from HVCC, Defendants

intentionally or recklessly relied on a probation order that either never existed or was invalid

(due to a lack of timely notice to Plaintiff); and (2) Defendants' alternative motion (for summary

judgment) must be denied as "premature, inaccurate, and incomplete." (*See generally* Dkt. No. 9 [Plf.'s Response].)

More specifically, in support of this latter argument, Plaintiff argues as follows: (1) certain of the documents provided by Defendants in support of their motion are "frivolous"; (2) "Plaintiff intends on answering [the] question of the genuine[ne]ss of each . . . document [submitted by Defendants in support of their motion] at a later stage in the proceeding"; and (3) the record evidence adduced by Defendants does not establish that Plaintiff was provided due process before he was dismissed from HVCC because, among other things, (a) he was never given "notice of a post-probation or probation tenure . . . in 2002," (b) having received his Associate's Degree in 2005, he "was no longer a student at [HVCC] as of December 30, 2005," and it was not until after he was accepted in 2006 into the criminal justice program that he became a student again, and (c) as a result, he was not, and could not have been, on probation in 2007. (*Id.*)

## II.    GENERAL LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, Pursuant to Fed. R. Civ. P. 12(b)(6)

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

Because such motions are often based on the first ground, a few words on that ground are

appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  This tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v.*

6

*Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. [citations omitted].[3]

---

[3]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak*, 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*) [citations omitted].

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Ashcroft*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants.  While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se*

plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[4]

Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the

requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil

rights plaintiffs must follow.[5]  Stated more simply, when a plaintiff is proceeding *pro se*, "all

normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28

[citations omitted].

Finally, a few words are appropriate regarding what documents are considered on a

motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.

R. Civ. P. 12(b)(6).  For purposes of Fed. R. Civ. P. 12(b)(6), "[t]he complaint is deemed to

include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2009) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of

any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a

[document] upon which it solely relies and which is integral to the complaint," the court may

nevertheless take the document into consideration in deciding the defendant's motion to dismiss,

without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc.*

*v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (internal quotation marks and

---

[4]      *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[5]      *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

citation omitted).

    **B.**    **Legal Standard Governing the Conversion of a Motion to Dismiss for Failure to State a Claim to a Motion for Summary Judgment, Pursuant to Fed. R. Civ. P. 12(d)**

Rule 12(d) of the Federal Rules of Civil Procedure provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[, and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  "[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." *Global Network Commc'ns, Inc.*, 458 F.3d at 155.

Ordinarily, before converting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) into one for summary judgment under Fed. R. Civ. P. 56, formal notice is not required where a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings." *Villante v. Dep't of Corr. of City of New York*, 786 F.2d 516, 521 (2d Cir.1986) (internal quotation marks omitted) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 [2d Cir. 1985]).  In the case of a *pro se* party, however, "[n]otice is particularly important" because the *pro se* litigant "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983).  "Accordingly, *pro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment." *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009).

## C.     Legal Standard Governing a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c),(e).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial.  Fed. R. Civ. P. 56(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "Factual disputes that

are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[6]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[7]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[8]  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement[9]–even where the nonmoving party was proceeding *pro se* in a civil rights case.[10]

### III.   ANALYSIS OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As an initial matter, for the reasons stated above in Part II.A. of this Decision and Order,

---

[6]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[7]      *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[8]      *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[9]      Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[10]      *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

the Court notes that, in deciding Defendants' motion to dismiss for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6), the Court will consider only (1) the four-corners of

Plaintiff's Complaint, and (2) any documents that are incorporated by reference in that

Complaint, integral to that Complaint, and provided by Defendants.  Moreover, although

Plaintiff's one-count complaint does not appear to expressly differentiate between a procedural

due process claim and a substantive due process claim, the Court will analyze both potential

claims, out of special solicitude to Plaintiff as a *pro se* civil rights litigant.

###     A.     Plaintiff's Procedural Due Process Claim

"In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person

acting under color of state law deprived him or her of a right, privilege, or immunity secured by

the United States Constitution or the laws or treaties of the United States."  *Donohue v. Baker*,

976 F. Supp. 136, 142 (N.D.N.Y. 1997) (Kahn, J.).  Here, there is no issue that Defendants are

state actors.  As a result, "[t]he issue on this motion is whether a material issue of fact is present

with respect to the constitutional deprivation[] alleged in the [C]omplaint."  *Donohue*, 976 F.

Supp. at 142.

"The Due Process clause protects individuals from being deprived of property or liberty

without due process of law."  *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406,

419 (E.D.N.Y. 2009) (citing *Kelly Kare, Ltd. v. O'Rourke*, 930 F. 2d 170, 175 [2d Cir. 1991]).

"It is well settled that an expulsion from college is a stigmatizing event which implicates a

student's protected liberty interest."  *Donohue*, 976 F. Supp. at 145 (citing *Albert v. Carovano*,

824 F.2d 1333, 1339 n.6 [2d Cir.1987], *rehearing granted and modified on other grounds*, 839

F.2d 871, *rehearing en banc and vacated on other grounds*, 851 F.2d 561 [1988]).  As a result,

the Court finds that, before his dismissal from HVCC, Plaintiff was due some degree of process. However, "[a]s in all cases involving an alleged deprivation of due process, the difficult question for the [C]ourt is determining precisely what process was due." *Donohue*, 976 F. Supp. at 145 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 [1972]).

Here, Plaintiff does not allege facts plausibly suggesting that he was wrongfully accused of committing an act that subjected him to discipline in March 2007. Nor does Plaintiff allege facts plausibly suggesting that he was not afforded (1) notice that a disciplinary hearing would be taking place as a result of his conduct, or (2) the opportunity at his disciplinary hearing to (a) be present, (b) be heard, (c) ask questions of all testifying witnesses, (d) provide evidence in his defense, including his own witnesses, or (e) make a closing statement. In addition, Plaintiff does not dispute Defendants' argument that, based on the available record evidence, it is clear he was afforded the above-described rights.

Rather, liberally construed, Plaintiff's Complaint alleges that, in dismissing him from HVCC, Defendants wrongfully relied on two pieces of evidence: the fact that he was on probation in March 2007; and "fraudulent photographs" from the 2002 campus dispute (which resulted in his suspension from HVCC for two semesters). Based on Defendants' allegedly wrongful reliance on *each* of these two pieces of evidence, Plaintiff asserts two procedural due process claims: a claim that Defendants deprived Plaintiff of his procedural due process right to an impartial hearing officer, and a claim that Defendants deprived Plaintiff of his procedural due process right to challenge the evidence that was relied on to dismiss him from HVCC. In addition to these four procedural due process claims, Plaintiff asserts a fifth procedural due process claim based on Defendants' wrongful reliance on the fact that he was on probation in

14

March 2007: a claim that Defendants deprived him of his procedural due process right to notice of the fact that, because he was on probation at the time he committed the alleged infraction in 2007, his disciplinary hearing in March 2007 might result in his dismissal from HVCC.

As a result, Plaintiff's Complaint may be liberally construed as asserting five distinct procedural due process claims: (1) a claim that Defendants deprived Plaintiff of his procedural due process right to an impartial hearing officer by wrongfully relying on evidence that he was on probation in March 2007; (2) a claim that Defendants deprived Plaintiff of his procedural due process right to challenge the validity of the evidence that he was on probation in March 2007; (3) a claim that Defendants deprived Plaintiff of his procedural due process right to notice of the fact that, because he was on probation at the time he committed the alleged infraction in 2007, his disciplinary hearing in March 2007 might result in his dismissal from HVCC; (4) a claim that Defendants deprived Plaintiff of his procedural due process right to an impartial hearing officer by wrongfully relying on "fraudulent photographs" from the 2002 campus dispute; and (5) a claim that Defendants deprived Plaintiff of his procedural due process right to challenge the validity of the "fraudulent photographs" from the 2002 campus dispute.

Before proceeding to an analysis of these five claims, the Court notes that, based on a careful review of the allegations and arguments asserted in Plaintiff's "cross-motion," it appears that Plaintiff is attempting to assert a *sixth* claim: a claim that his procedural due process rights were violated in that, if he had in fact been placed on probation following the 2002 incident, he never received notice of that probation. To the extent that Plaintiff is indeed attempting to assert this claim, the Court dismisses it. This is because Plaintiff has not alleged facts plausibly suggesting that it was *Defendants* who placed him on probation, and/or failed to notify him of

15

that placement, in 2002.  "'[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir.

1991]).  Having disposed of this claim, the Court will now return to an analysis of the five

above-described procedural due process claims

> **1.     Three Procedural Due Process Claims Arising from Defendants'
>           Reliance on Evidence that Plaintiff Was on Probation in March 2007**

As explained above in Part III.A. of this Decision and Order, Plaintiff's Complaint

alleges that, in dismissing him from HVCC, Defendants wrongfully relied on, *inter alia*,

evidence that he was on probation in March 2007.  Based on this factual allegation, Plaintiff

asserts two distinct procedural due process claims: (1) a claim that Defendants deprived Plaintiff

of his procedural due process right to an impartial hearing officer by wrongfully relying on

evidence that he was on probation in March 2007; and (2) a claim that Defendants deprived

Plaintiff of his procedural due process right to challenge the validity of the evidence that he was

on probation in March 2007.

> **a.     Denial of Right to Impartial Hearing Officer**

The Second Circuit has recognized that the right to an impartial hearing officer in a

school disciplinary hearing is a "fundamental requirement" of due process.  *Holmes v.

Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009) (citing *Winnick v. Manning*, 460 F.2d 545, 548

[2d Cir. 1972]); *see also Wasson v. Trowbridge*, 382 F.2d 807, 813 (2d Cir. 1967).[11]  In a claim

---

[11]        The due process requirement of an impartial hearing officer at a disciplinary
proceeding in the educational context  is consistent with due process requirements afforded by
the Second Circuit in other areas of law.  For example, it has long been settled that, in the
prisoner context, "[d]ue process is satisfied if an inmate facing disciplinary charges receives (1)

based on a biased hearing officer, "[a] plaintiff alleging a denial of due process must allege facts

tending to

 show bias." *Szoke v. Carter*, 165 F.R.D. 34, 38 (S.D.N.Y. 1996) (citing *Snyder v. Farnsworth*,

896 F. Supp. 96, 98-99 [N.D.N.Y. 1995]).   The alleged facts must support a claim based on

actual bias, conflict of interest, or prior involvement.   *Homes*, 342 F. App'x at 653; *Withrow v.*

*Larkin*, 421 U.S. 35, 47 (1975) (noting that "various situations have been identified in which

experience teaches that the probability of actual bias on the part of the judge or decisionmaker is

too high to be constitutionally tolerable[, which include situations] in which the adjudicator has a

pecuniary interest in the outcome, and in which he has been the target of personal abuse or

criticism from the party before him").   In addition, "prejudgment can create bias, but only in

limited circumstances[.]"   *B.A.M. Brokerage Corp. v. State of N.Y.*, 718 F. Supp. 1195, 1202

(S.D.N.Y. 1989).   As detailed by the Supreme Court in *Withrow*,

> The contention that the combination of investigative and adjudicative
> functions necessarily creates an unconstitutional risk of bias in
> administrative adjudication has a much more difficult burden of
> persuasion to carry. It must overcome a presumption of honesty and
> integrity in those serving as adjudicators; and it must convince that,
> under a realistic appraisal of psychological tendencies and human
> weakness, conferring investigative and adjudicative powers on the
> same individuals poses such a risk of actual bias or prejudgment that
> the practice must be forbidden if the guarantee of due process is to be
> adequately implemented.

---

advanced written notice of the charges against him; (2) a hearing affording him a reasonable
opportunity to call witnesses and present documentary evidence; (3) a fair impartial hearing
officer; and (4) a written statement of the evidence upon which the hearing officer relied in
making his determination.   *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 376 (N.D.N.Y. 2010)
(McCurn, J.) (citing *Wolff v. McDonnel*, 418 U.S. 539, 563-67 [1974]); *Ford v. Fischer*,
09-CV-0723, 2011 WL 856416, at *8 (N.D.N.Y. Jan. 31, 2011) (Baxter, M.J. adopted by Hurd,
J.).

*Id*. at 47; *accord Touche Ross & Co. v. SEC*, 609 F.2d 570, 582 (2d Cir. 1979).

To meet this burden, the plaintiff must establish a "specific foundation . . . that the [agency] had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of evidence to be presented at the . . . hearing." *Withrow*, 421 U.S. at 55. "The fact that the decisionmaker may have expressed a belief publicly–after an investigation but prior to a hearing–that the plaintiff acted unlawfully does not establish bias." *B.A.M. Brokerage Corp.*, 718 F. Supp. at 1202.  Similarly, "[t]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board at a later adversary hearing." *Withrow*, 421 U.S. at 55.  As the Court noted:

> It is . . . very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate . . . due process of law.

*Id*. at 56.

Here, even when construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting that Defendants (1) had a pecuniary interest in the outcome of his disciplinary hearing, (2) had been the target of personal abuse or criticism from Plaintiff, or (3) were involved in the investigative process that lead to Plaintiff's disciplinary charges, let alone were involved in such a manner that would have suggested their prejudice against Plaintiff.

As a result, this claim is dismissed.

18

**b.      Denial of Right to Challenge Evidence in the Record**

"The right to cross-examine witnesses has not been considered an essential requirement

of due process in school disciplinary proceedings."  *Winnick v. Manning*, 460 F.2d 545, 549 (2d

Cir. 1972); *see also Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir.), *cert. denied*,

368 U.S. 930 (1961).  However, if a case is essentially one of credibility, the "cross-examination

of witnesses might [be] essential to a fair hearing."  *Winnick*, 460 F.2d at 550; *see also Johnson*

*v. Collins*, 233 F. Supp.2d 241, 248 (D. N.H. 2002) (finding that a student facing expulsion from

school is entitled to, among other things, "confront and . . . cross-examine the witnesses against

him"); *Goss v. Lopez*, 419 U.S. 565, 579, 584 (1975) (holding that students facing a ten-day

suspension must be given some kind of notice and afforded some type of hearing, but

"suspensions or expulsions for the remainder of the school term, or permanently, may require

more formal procedures").  In addition, where a student is facing serious disciplinary

consequences, such as expulsion or dismissal from school, a number of district courts have

determined that the student "must not be punished except on the basis of substantial evidence."

*Johnson*, 233 F. Supp.2d at 248 (citing *Carey on Behalf of Carey v. Maine Sch. Admin. Dist. #*

*17*, 754 F. Supp. 906, 919 [D. Maine 1990]); *LaBrecque ex rel. T.N. v. Sch. Admin. Dist. No. 57*,

06-CV-0016, 2006 WL 752776, at *2 (D. Me. Mar. 22, 2006); *Le v. Univ. of Med. and Dentistry*,

08-CV-0991, 2009 WL 1209233, at *13 (D. N.J. May 4, 2009) (citing *Sill v. Penn. State Univ.*,

462 F.2d 463 [3d Cir. 1972]).

Here, Plaintiff has alleged (conclusorily) that he was "never [placed] on probation"

following the 2002 on-campus incident, and that he was dismissed from HVCC in 2007 because

Defendants found that he was on probation.  Plaintiff has also alleged (conclusorily) that a

19

certain photograph from the 2002 campus incident (which was used as evidence against Plaintiff in 2002 and relied on by Defendants in 2007 in support of their recommended dismissal) was fraudulently altered.  In other words, liberally construed, Plaintiff's Compaint has alleged (conclusorily) that Defendants lacked substantial evidence to dismiss him from HVCC because his dismissal was based on Defendants' incorrect findings.

As an initial matter, the Court finds that Plaintiff's allegation that he was "never [placed] on probation" is rendered implausible by the hearing transcript provided by Defendants, which is incorporated by reference into Plaintiff's Complaint, for the reasons stated above in Part II.A. of this Decision and Order.[12]  In that hearing transcript, Plaintiff admitted that he was placed on probation following the 2002 incident, with his probationary status being "lifted" at some point prior to the 2007 incidents giving rise to the 2007 disciplinary hearing.  (Dkt. No. 7, Attach. 4, at 8-9; *see also* Dkt. No. 7, Attach. 5, at 25 [attaching unsigned, undated letter reflecting Plaintiff's punishment for 2002 incidents to include "disciplinary probation for the remainder of [his] tenure at [HVCC]"].)[13]

In addition, the Court finds that the hearing transcript (which is, again, incorporated by reference into Plaintiff's Complaint) plausibly suggests that Plaintiff's dismissal from HVCC

---

[12]     As explained above in Part II.A. of this Decision and Order of this Decision and Order, ordinarily, it would be inappropriate for the Court to consider record evidence at this stage of the proceedings; however, where a complaint relies heavily upon the terms and effect of a document, rendering the document integral to the complaint, the court may consider the document even if is not incorporated by reference in the complaint.  Here, the Court finds that Plaintiff's Complaint so relies on the hearing transcript.  (*See generally* Dkt. No. 1.)

[13]     The Court notes that, in his Complaint, Plaintiff sufficiently references this unsigned, undated letter when he alleges that, at the disciplinary hearing, Defendant Popovics "used a priorly [sic] established disciplinary record[] against the Plaintiff[, which] . . . did not include a probation order."  (Dkt. No. 1 at 6.)

was not, in fact, "based on the 2002 incident."  Rather, the hearing transcript plausibly suggests

that Plaintiff's dismissal from HVCC was based on the following two facts: (1) the fact that, on

February 22, 2007, Plaintiff was issued a warning by Defendant Popovics based on his behavior

in 2007, and advised that any further "disruption of class or inappropriate behavior to instructors

[would] result in an immediate dismissal from class for the remainder of the [20]07 semester";

and (2) the fact that, after receiving the warning, Plaintiff nonetheless sent "a series of

[threatening] emails" to three different instructors and ignored a campus officer's request to see

Defendant Popovics regarding his behavior.  (Dkt. No. 7, Attach. 4, at 4-8.)

   Finally, Plaintiff's conclusory allegation that Defendants lacked substantial evidence to

dismiss him from HVCC is unsupported by any additional factual allegations reflecting (1) the

nature of the 2007 incident(s) giving rise to the hearing, (2) the penalty, if found to be in

violation of the alleged offense(s), under the school regulations, or (3) whether the penalty may

be enhanced based on a prior violation that resulted in a two-semester suspension.  In other

words, even assuming that the photographs were "fraudulent" and/or that Plaintiff was not on

probation at the time of the 2007 hearing (either because he was not afforded a "Board Hearing"

following the 2002 incident, and/or because he received his Associate's Degree in 2005), the

Court is unable to conclude that Plaintiff has alleged facts plausibly suggesting that Defendants

did not possess substantial evidence to dismiss him from school.

   For these reasons, this claim is dismissed.[14]

---

[14]   The Court notes that various of the documents provided by Defendants (which are
incorporated by reference in Plaintiff's Complaint) plausibly suggest that Defendant Popovics
was the complainant at Plaintiff's disciplinary hearing, that Defendant McCarthy was the
Coordinator of the Campus Judicial System, that Defendant McCarthy was "not a representative
of either [Plaintiff or Defendant McCarthy]," and that Kathleen Quirk was the "Chairperson of

c.        **Denial of Right to Notice of Possibility of Dismissal**

In *Goss v. Lopez*, the Supreme Court held that a student is entitled to "be given oral or

written notice of the charges against him," and elaborated on this conclusion as follows:

> There need be no delay between the time "notice" is given and the
> time of the hearing. In the great majority of cases the disciplinarian
> may informally discuss the alleged misconduct with the student
> minutes after it has occurred. We hold only that, in being given an
> opportunity to explain his version of the facts at this discussion, the
> student first be told what he is accused of doing and what the basis of
> the accusation is.

419 U.S. at 581-82.  The "timing and content" of the requisite notice "will depend on appropriate

accommodation of the competing interests involved."  *Id.* at 579.  The Second Circuit has said

that "[n]otice must be 'reasonably calculated, under all the circumstances, to appraise interested

parties of the pendency of the action and afford them an opportunity to present their objections.'"

*Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989) (quoting *Mullane v. Cent. Hanover Bank*

*& Trust Co.*, 339 U.S. 306, 313 [1950]), *cert. denied*, 496 U.S. 941 (1990).  However, "it is also

true that a notice need not be drawn with the precision of a criminal indictment."  *Blanton v.*

*State University of New York*, 489 F.2d 377, 386 (2d Cir. 1973).

Here, again, Plaintiff does not allege facts plausibly suggesting that he was not notified of

(1) the charges pending against him, or (2) the fact that a disciplinary hearing would be

conducted in response to those charges.  Nor does he allege facts plausibly suggesting that he

---

the Review Board" presiding at the hearing.  (Dkt. No. 7, Attach. 4 at 2.)  In other words,
Plaintiff's Complaint alleges facts plausibly suggesting that neither Defendant was a hearing
officer at Plaintiff's disciplinary hearing.  Because adequate grounds exist on which to dismiss
the two procedural due process claims discussed above in Parts III.A.1.a. and III.A.1.b. of this
Decision and Order, the Court need not, and does not, address the lack-of-personal involvement
issue that plagues those two claims.

objected to the notice prior to or during the hearing, requested clarification, was under any

misunderstanding regarding the nature of the charges against him, or was otherwise prejudiced in

preparing his defense.  Instead, liberally construed, Plaintiff's Complaint alleges that he should

have been notified of the fact that, because he was on probation at the time he committed the

alleged infraction in 2007, his disciplinary hearing in March 2007 might result in his dismissal

from HVCC.

As the Second Circuit has made clear, "[t]he notice requirement of due process does not

require that school administrators provide a detailed listing of all possible courses of action for

which discipline might be imposed or of all possible penalties."  *Rosa R. v. Connelly*, 889 F.2d at

439.[15]  In any event, a document provided by Defendant, which is also incorporated by reference

into Plaintiff's Complaint, plausibly suggests that Plaintiff was in fact notified, prior to the

disciplinary hearing, that he was being charged with, among other things, "failure to comply

with conditions of disciplinary probation issued 12/12/02."  (Dkt. No. 7, Attach. 5, at 1.)

For each of these two alternative reasons, this claim is dismissed.

---

[15]     *See also Rubino v. Saddlemire*, 05-CV-1955, 2007 WL 685183, at *7 (D. Conn.
Mar. 1, 2007) ("In view of these authorities, it cannot be said here that the notice sent to Plaintiff
deprived him of due process. The two letters informed Plaintiff of the code sections he was
accused of violating, gave him notice of the hearing date, informed him that he had a right to
have a 'support person' present during the hearing, would be permitted to bring witnesses to
present information on his behalf, was entitled to submit a written statement for the judicial
board to consider and could have other people submit written statements on his behalf, and
notified him that the University would be contacting University Police to appear and provide
information at the hearing. The May 6, 2004 letter also informed Plaintiff where he could find
information regarding hearing procedures and attached a copy of the police incident report. . . .
Furthermore, there is no evidence that Plaintiff objected to the notice prior to or during the
hearing, requested clarification, was under any misunderstanding regarding the nature of the
charges against him or was otherwise prejudiced in preparing his defense. Finally, the letters,
coming thirty-six and fourteen days, respectively, prior to the hearing, gave Plaintiff sufficient
time to prepare for the hearing.").

2. **Two Procedural Due Process Claims Arising from Defendants'
Reliance on "Fraudulent Photographs" from the 2002 Campus
Dispute**

As explained above in Part III.A. of this Decision and Order, Plaintiff's Complaint
alleges that, in dismissing him from school, Defendants wrongfully relied on, *inter alia*,
"fraudulent photographs" from the 2002 campus dispute.  Based on this factual allegation,
Plaintiff asserts two distinct procedural due process claims: (1) a claim that Defendants deprived
Plaintiff of his procedural due process right to an impartial hearing officer by wrongfully relying
on "fraudulent photographs" from the 2002 campus dispute; and (2) a claim that Defendants
deprived Plaintiff of his procedural due process right to challenge the evidence that was relied on
to dismiss him from HVCC by wrongfully relying on "fraudulent photographs" from the 2002
campus dispute.

Plaintiff's allegation that Defendants wrongfully relied on "fraudulent photographs" from
the 2002 campus dispute is similar to Plaintiff's allegation that Defendants wrongfully relied on
invalid evidence that he was on probation in March 2007.  As a result, the Court's analysis of
Plaintiff's two procedural due process claims based on the "fraudulent photographs" is the same
as the Court's analysis of Plaintiff's two procedural due process claims based on the allegedly
invalid evidence that he was on probation in March 2007.   For this reason, the Court need not,
and does not, repeat that analysis in this section of this Decision and Order.  Rather, the Court
will merely state that it dismisses these two procedural due process claims for the same reasons
as stated above in Parts III.A.1.a. and III.A.1.b. of this Decision and Order.

B. **Plaintiff's Substantive Due Process Claim**

"Substantive due process imposes limits on arbitrary state action regardless of what

procedural protection is provided." *Rubino v. Saddlemire*, 05-CV-1955, 2007 WL 685183, at *9
(D. Conn. Mar. 1, 2007). Substantive due process protects against "'egregious conduct' which
goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and
can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience."
*Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson
v. Glick*, 481 F.2d 1028, 1033 & n.6 [2d Cir. 1973], *partially abrogated on other grounds by
Graham v. Connor*, 490 U.S. 386 [1989]). The Second Circuit has said that substantive due
process "does not forbid governmental actions that might fairly be deemed arbitrary or
capricious and for that reason correctable in a state court lawsuit. . . . [Its] standards are violated
only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental
authority." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (quoting
*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 [2d Cir. 1999]). The standard is a demanding
one; substantive due process operates as 'an outer limit on the legitimacy of governmental
action.'" *Rubino*, 2007 WL 685183, at *9 (quoting *Natale*, 170 F.3d at 263).

      Here, even assuming that Defendants wrongfully relied on Plaintiff's probationary status
in dismissing him from HVCC, it cannot be said that Defendants' dismissal was "egregious," in
light of Plaintiff's allegations that (1) he was previously suspended from HVCC for two
semesters (i.e., was not a first-time minor offender), and (2) he was facing at least *some* form of
punishment as a result of the incident(s) giving rise to the March 2007 hearing. In other words,
Plaintiff has failed to allege facts plausibly suggesting that Defendants' actions were "so 'brutal'
and 'offensive to human dignity' as to shock the conscience." *Half Hollow Hills Cent. Sch.
Dist.*, 298 F.3d at 173.

As a result, this claim is dismissed.

### C.     Nature of the Dismissal

The Second Circuit has made clear that, when a plaintiff is proceeding *pro se*, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).  Here, it appears to the Court that, even though Plaintiff has not currently alleged facts plausibly suggesting a due process claim in his Complaint, a liberal reading of the Complaint gives the Court some indication that a valid claim may be stated.  For example, the documents provided by Defendants plausibly suggest that Plaintiff's 2007 disciplinary hearing was based, in part, on his violation of his probationary status.  As a result, it appears possible that a valid claim may be stated.  For example, it appears possible that Plaintiff may be able to allege facts plausibly suggesting that he was not afforded an opportunity to challenge the imposition of indefinite probation,[16] and that he would not have been dismissed from HVCC but for his probationary status.  In addition, it appears possible that Plaintiff may be able to allege facts plausibly suggesting that Defendants played an active role in the investigatory process leading up to Plaintiff's disciplinary hearing, and/or were responsible for placing Plaintiff on probation following the 2002 on-campus incident.  Finally, it appears possible that Plaintiff may be able to allege facts plausibly suggesting that his "tenure" (and thus his probationary status) expired after he received his Associate's Degree in 2005, and that Defendants therefore lacked substantial evidence to dismiss him from HVCC based on the

---

[16]     The Court notes that Plaintiff alleges, conclusorily and/or vaguely, that he was suspended for two semesters as a result of the 2002 incident "without a Board Hearing."  (Dkt. No. 1 at 6.)

pendency of his probationary status.

For these reasons, the Court finds that Plaintiff should be afforded an opportunity to amend his Complaint before this action is dismissed.  As a result, Plaintiff's Complaint is conditionally dismissed unless, within thirty (30) days from the date of this Decision and Order, Plaintiff files an Amended Complaint that states a claim upon which relief can be granted.

## IV.    ANALYSIS OF DEFENDANTS' ALTERNATIVE MOTION (FOR SUMMARY JUDGMENT) AND PLAINTIFF'S CROSS-MOTION TO STRIKE

Even if the Court converted Defendants' motion to dismiss to one for summary judgment, that motion for summary judgment would be denied for two alternative reasons.  First, Defendants' motion for summary judgment is unsupported by a Local Rule 7.1 Statement.  The absence of such a Local Rule 7.1 Statement requires denial.  *See* N.D.N.Y. L.R. 7.1(c) ("Any motion for summary judgment shall contain a Statement of Material Facts. . . . Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.").  Second, Defendants' motion for summary judgment is unaccompanied by a Local Rule 56.2 Notice.  The absence of such a Local Rule 56.2 Notice requires denial.  *See* N.D.N.Y. L.R. 7.1(c) ("The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment."); N.D.N.Y. L.R. 56.2 ("When moving for summary judgment against a *pro se* litigant, the moving party shall inform the *pro se* litigant if the consequences of failing to respond to the summary judgment motion.").[17]  The Court notes that such notice is even more important than usual, under the

---

[17]    *See also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted].

circumstances, because Defendants are requesting that their motion to dismiss be "converted" to one for summary judgment, requiring that Plaintiff receive "unequivocal" notice of the meaning and consequences of that conversion, so that he has a reasonable opportunity to offer evidence bearing on triable issues. *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009).

Because adequate ground exists on which to deny Defendants' motion for summary judgment, the Court need not, and does not, reach the issue of whether Defendants' motion for summary judgment should be denied (or "struck" as argued by Plaintiff)[18] on the alternative ground that Plaintiff has not had the opportunity to conduct any discovery under Fed. R. Civ. P. 56(d). *See J & J Sports Prod., Inc. v. S & S Lounge, Inc*., 10-CV-5627, 2011 WL 477681, at *1 (E.D.N.Y. Feb. 3, 2011) ("[B]ecause plaintiff has yet to have the opportunity to conduct any discovery whatsoever, this Court declines to convert the Verified Motion to Dismiss into a motion for summary judgment at this juncture.").

For these reasons, Defendants' motion for summary judgment is denied without prejudice, and Plaintiff's cross-motion to strike is denied as moot and unsupported by a showing of cause.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 7) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, such that Plaintiff's Complaint (Dkt. No. 1) is conditionally **<u>DISMISSED</u>** unless, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an Amended Complaint that states a claim upon which relief can be granted;

---

[18]        *See*, *supra*, note 2 of this Decision and Order.

and it is further

      **ORDERED** that Defendants' alternative motion for summary judgment pursuant to Fed.

R. Civ. P. 56 (Dkt. No. 7) is **<u>DENIED</u> without prejudice** as unsupported by a Local Rule 7.1

Statement and unaccompanied by a Local Rule 56.2 Notice; and it is further

      **ORDERED** that Plaintiff's cross-motion to "strike" (Dkt. No. 9) is **<u>DENIED</u>** as moot

and unsupported by a showing of cause.

Dated: May 25, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge